UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JAMAAL R. JOHNSON                                          CIVIL ACTION

VERSUS

BURL CAIN, ET AL                                          NO. 11-325-JJB-CN

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, September 19, 2011.

                                                         **MAGISTRATE JUDGE CHRISTINE NOLAND**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JAMAAL R. JOHNSON                                                    CIVIL ACTION

VERSUS

BURL CAIN, ET AL                                                     NO. 11-325-JJB-CN

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petition for writ of habeas corpus (R. Doc. 1) filed by Jamaal R. Johnson ("Johnson" or "petitioner"). The State of Louisiana ("the State") filed arguments that oppose Johnson's habeas petition in its objections related to his motion to stay (R. Doc. 9) and in a memorandum filed on August 15, 2011 (R. Doc. 15).

## FACTUAL BACKGROUND

On October 12, 2004, at approximately 5:00 p.m., a black male entered the U.S. Agencies Casualty Insurance ("U.S. Agencies") location at Sullivan and Greenwell Springs Roads in Baton Rouge. An employee of U.S. Agencies, Ryan Rice ("Rice"), was assisting a customer, Roxie Ganaway ("Ganaway"), at the time. Rice greeted the black male and told him that he would be with him shortly. The man began impatiently pacing back and forth. The man then pulled out a gun, pointed it at Ganaway, and threatened to shoot her if she screamed. The man then instructed Ganaway to get under the desk and demanded that Rice open the safe. Ganaway complied. Rice informed the gunman that the safe was operated by a time-delayed lock and could not be opened for approximately fifteen (15) minutes. The gunman then moved Ganaway and Rice to a nearby bathroom to allow time to pass so that the safe could be opened. The gunman threatened to kill Ganaway, Rice,

1

and himself if the police were contacted. He then rummaged through Rice's desk drawer, taking his keys, cell phone, and approximately $250.00 in cash found in a cash box. He also took cash from a cash box in another employee's desk. He took Ganaway's keys, cell phone, and the cash that she had in her possession.

While the above encounter was transpiring, Charles Wilson, another customer, entered U.S. Agencies. The gunman emerged from the restroom, where he had been holding Rice and Ganaway at gunpoint, and told Wilson that he would "be with [him] in a second." Wilson, who had come in to make an insurance payment, waited patiently. The gunman ultimately approached Wilson and forced him into the restroom with the others. The gunman took Wilson's cell phone and the money he had in his hand. Approximately five minutes later, the gunman instructed Rice to "smash" the video surveillance equipment he found stored in an adjoining storeroom. Rice complied by picking up the digital recording equipment and throwing it onto the floor until it appeared broken. Rice eventually opened the safe and filled the blue nylon bag given to him by the gunman with all of its contents. The gunman fled taking Rice's fiancee's Oldsmobile Alero that Rice had driven to work that day.

The beginning of the above encounter was captured on videotape. Johnson was ultimately developed as a suspect. He was shown the video footage by investigating officers, and he informed them that the gunman "has clothes like me, but I can't tell if– I mean, I can't say if it is me. It looks like me, he has clothes like me, but I can't say if it is me." Johnson admitted to investigators that he had been using drugs and stated he could not recall what he had been doing at the time of the robbery.

2

## PROCEDURAL BACKGROUND

Johnson was subsequently charged by bill of information with six counts of armed robbery (Counts I-VI) and two counts of being a felon in possession of a firearm (Counts VII-VIII). He waived arraignment and pled not guilty to the charges against him. The State subsequently amended the bill of information by severing Counts IV, V, VI and VIII. Following a jury trial, during which all three victims identified Johnson as the man who robbed them at gunpoint,[1] Johnson was found guilty as charged on the three remaining armed robbery counts (Counts I-III) and the single felon in possession of a firearm count (VII) on October 25, 2005. The State informed the trial court that it intended to file habitual offender proceedings, and the trial court therefore deferred sentencing and ordered that a pre-sentence investigation be conducted.

On February 1, 2006, the state trial court denied various post-trial motions that had been filed by Johnson and adjudicated him a third felony offender as to Count I. Johnson was sentenced to life imprisonment at hard labor on Count I, to sixty-five (65) years imprisonment at hard labor on Counts II and III, and to fifteen (15) years imprisonment at hard labor on Count VII, with the sentences to run concurrently and without the benefit of parole, probation, or suspension of sentence.

Johnson appealed his convictions and sentences to the Louisiana First Circuit Court of Appeals. In his appeal, he asserted the following counseled assignments of error: (1)

---

[1] At trial, the defense presented a theory of mistaken identity. Petitioner's mother testified that her son had visited the U.S. Agencies office earlier on the day in question and that he told her he was going there to get a quote for a family member. She viewed the video footage captured on the U.S. Agencies surveillance camera and testified that the individual seen robbing the victims inside that establishment was not her son and that she had never observed her son in clothing similar to that worn by the gunman in the video.

that the state trial judge erred in failing to sustain an objection to the testimony of Detective Kent Landacre when such witness purposely gave unresponsive answers to questions by both the State and the defense in order to introduce inadmissible "other crimes" evidence; (2) that his trial counsel was ineffective in failing to point out Detective Landacre's pattern of unresponsive answers in order to have admitted inadmissible "other crimes" evidence before the jury and in failing to request a mistrial. Johnson also filed a *pro se* appellate brief in which he alleged other claims of ineffective assistance of counsel. The First Circuit affirmed Johnson's convictions and sentences on December 28, 2006. The court of appeals did not consider Johnson's *pro se* claims, however, on the basis that such claims would "best be considered in their entirety by the trial court on post-conviction at an evidentiary hearing" since they "involve[d] circumstances outside the record" that the appeals court had no way of considering. Johnson did not seek writs to the Louisiana Supreme Court concerning the First Circuit's decision on direct appeal.

On or about March 29, 2007, Johnson filed an application for post-conviction relief with the state trial court, wherein he raised the following claims: (1) that his counsel denied him the right to testify on his own behalf under *State v. Hampton*, 00-0522 (La. 3/22/02), 818 So.2d 720; (2) that his trial counsel was ineffective for failing to interview, investigate, or call to testify at trial alibi witnesses; (3) that his appellate counsel was ineffective for failing to assign as error the insufficiency of the evidence; and (4) that the evidence was insufficient to support his conviction for felon in possession of a firearm in that the State failed to demonstrate that the alleged perpetrator "possessed" a firearm at the time of the alleged robbery. On June 18, 2008, a Commissioner with the 19th Judicial District Court recommended that Johnson's Claims 2, 3, and 4 be denied. The Commissioner, however,

4

recommended that Johnson should be granted post-conviction relief on his first claim concerning the denial of his right to testify. The State filed a traversal to that recommendation, and an evidentiary hearing was held on the matter on December 8, 2008. Following that hearing, on December 10, 2008, the state trial court issued a ruling declining to accept the Commissioner's recommendation relative to Johnson's right to testify claim and denying that claim. In that ruling, however, the trial court deferred consideration of Johnson's remaining post-conviction claims 2, 3, and 4 and did not rule upon them at that time.

Johnson sought writs to both the Louisiana First Circuit and the Louisiana Supreme Court concerning his right to testify claim, which writ requests were denied on June 22, 2009 and September 17, 2010 respectively. The state trial court ultimately denied Johnson's claims 2, 3, and 4 of his post-conviction relief application on January 13, 2010. Johnson sought writs from the First Circuit and the Louisiana Supreme Court concerning those three remaining claims, which requests were denied on May 11, 2010 and June 17, 2011.

On or about May 16, 2011, Johnson filed his present habeas petition, wherein he asserts the following two claims: (1) that his trial counsel denied his right to testify; and (2) ineffective assistance of trial counsel in that his counsel failed to interview, investigate, or call alibi witnesses to testify at trial, particularly when counsel was aware of alibi witnesses.

## **LAW & ANALYSIS**

**I.     Claim No. 1 - Denial of right to testify:**

Upon federal habeas review, a claim that a criminal defendant was denied his right

to testify at trial as a result of his trial counsel's actions is governed by the legal standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *U.S. Farahkhan*, 254 F.3d 70 (5th Cir. 2001). To prevail on such a claim, a habeas petitioner must show: (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced his defense. *Farahkan*, at *1. The U.S. Fifth Circuit Court of Appeals has specifically held that, in order to prevail on the prejudice prong of an ineffective assistance of counsel claim based upon a denial of the defendant's right to testify, the petitioner must show that the error by counsel was so serious as to "render[ ] the result of the trial unreliable or the proceeding fundamentally unfair." *Bell v. Quarterman,* 2009 WL 2391575, **1 (5th Cir. 2009), quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Graham v. Roberts*, 1996 WL 512222 (5th Cir. 1996)(applying a harmless error/prejudice standard to habeas petitioner's ineffective assistance of counsel claim based on a denial of the right to testify).

In contrast, the Louisiana Supreme Court held, in *State v. Hampton*, 2000-0522 (La. 2002) 818 So.2d 720, that a defendant's right to testify is so fundamental a right that it is not amenable to a harmless error/prejudice analysis like that utilized in *Strickland*. *Hampton*, at 727 (holding that the denial of a criminal defendant's right to testify, after he unequivocally makes known his desire to do so, simply cannot be amenable to a harmless-error analysis). Thus, the standard for proving ineffective assistance of counsel based upon the denial of a defendant's right to testify on his own behalf is different (and easier to demonstrate) under Louisiana state law than under federal law, in that, under state law, a showing of prejudice or harmful error resulting from the failure to testify is not required.

Despite petitioner's representation to the Court that his "right to testify" habeas claim was exhausted in the state courts, it now appears to the Court, after a thorough review of the briefs filed by Johnson during post-conviction proceedings, that Johnson did not fully exhaust that claim in the state court system. In his briefs filed during post-conviction relief proceedings, Johnson argued (and the state courts analyzed) his right to testify claim solely on the basis of the state law standard set forth in *Hampton*. His right to testify claim was never analyzed under the applicable federal standard set forth in *Strickland*. As such, the state courts were never fairly presented with any arguments/evidence concerning whether Johnson's case was prejudiced by the alleged denial of his right to testify (*i.e.*, whether the denial of his right to testify constituted harmless error), nor did the state courts independently consider that issue.[2] Although a habeas petitioner can properly exhaust a claim of ineffective assistance of counsel under the federal constitution by referring in the state court system to a state constitutional right that is subject to the same standard,[3] that

---

[2] *See, Burks v. Thaler*, 2011 WL 1258535 (5th Cir. 2011), quoting *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005)("The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court"); *Caswell v. Ryan*, 953 F.2d 853, 857 (3d Cir. 1992)(Although the exhaustion rule is a matter of comity and not jurisdiction, it is to be strictly adhered to because it expresses respect for our dual judicial system).

[3] *See, Cook v. State of California*, 2006 WL 2087108 (9th Cir. 2006); *Hoffman v. Wainwright*, 484 F.Supp. 355 (M.D.Fla. 1979)(State prisoner did not exhaust his state court remedies on the issue of his federal constitutional right to speedy trial by asserting a violation of his state constitutional right to speedy trial or a violation of state rules of criminal procedure; thus, he could not maintain federal habeas corpus proceedings on the basis of federal right to speedy trial); *Sanders v. Ryder*, 342 F.3d 991, 1000 (9th Cir. 2003)(holding that a petitioner may exhaust a federal constitutional right by referring to a state constitutional right if the rights are coextensive); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988)(Emphasis added)(a federal habeas corpus petition should not be dismissed on grounds of procedural default if a petitioner has previously brought an issue before the state courts alleging only state law violations, when such a claim is *equally supported* by federal law); *Anderson v. Harless*, 459 U.S. 4, 7, 103 S.Ct. 276, 278, 74 L.Ed.2d 3 (1982)(petitioner cited federal authority only by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law" (internal quotation marks omitted)). The petitioner must explicitly state the federal claim from the outset, and if state and federal constitutional law overlap in their applicability to petitioner's claim, he must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue); *Duncan v. Henry*, 513 U.S. 364, 115 S.Ct. 887, 888, 130 L.Ed.2d 865

is not the case in the present matter where the standard for proving ineffective assistance of counsel based upon a denial of the right to testify is different at the federal and state levels. Accordingly, because Johnson failed to fairly present to the state courts his right to testify claim analyzed under applicable federal law as set forth in *Strickland*, his first claim is unexhausted and cannot be reviewed by this Court.[4]

---

(1995)(per curiam)("Mere similarity" between the claim raised at the state level and a federal claim is not sufficient, since the state court, when presented with a claim of error under state law, "understandably confine[s] its analysis to the application of state law"); *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004)(holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so" and explaining that "[i]t is not enough that all the facts necessary to support the federal claim were before the state court, or that a somewhat similar claim was made"); *Kimbrough v. Buss*, 2011 WL 2414879 (N.D.Fla. 2011)(noting that the Eleventh Circuit takes a more restrictive approach by requiring specific reference to the U.S. Constitution and favoring citations to federal cases in state court briefs in order to exhaust and noting that such stricter standard requires the petitioner to differentiate a claim under the U.S. Constitution from one under a state constitution); *McNair v. Campbell*, 416 F.3d 1291, 1303-03 (11th Cir. 2005), *cert. denied*, 126 S.Ct. 1828, 164 L.Ed.2d 522 (2006)(finding that the petitioner's references to federal law in his state habeas proceedings were "exactly the type of needles in the haystack that we have previously held are insufficient to satisfy the exhaustion requirement" and noting that the petitioner "relied on state law opinions to argue a state law claim under a state law standard, citing a lone federal district court opinion"); *Ellis v. Estep*, 2010 WL 2692171 (D.Colo. 2010)(finding exhaustion where the state courts analyzed the habeas petitioner's claims under a state law standard that was "virtually identical" to the applicable federal law standard but noting that such conclusion was a "close one"); *Jones v. Lavan*, 2002 WL 31761423 (E.D.Pa. 2002)(finding a failure to exhaust where state courts understood the petitioner to be raising a claim of ineffective assistance of counsel only under state law and analyzed it entirely under state legal standards).

[4] Alternatively, Johnson's right to testify claim based upon *Hampton* could be dismissed because it raises only a violation of state law for which there is no federal habeas corpus relief. A writ of habeas corpus is available under 28 U.S.C. §2254(a) only on the basis of some transgression of federal law binding on the state courts. *Jackson v. Dickerson*, 2011 WL 1337430 (E.D.Cal 2011), citing *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985). It is unavailable for alleged error in the interpretation or application of state law. *Id.* In *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), the U.S. Supreme Court reiterated the standard of review for a federal habeas court. The Court held that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Id.*, at 67-68. The Court reemphasized that "federal habeas corpus relief does not lie for error in state law." *Id.* The Supreme Court further noted that the standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." *Id.*, at 68.

Because Johnson's right to testify claim, as presented to the state courts and herein, is based upon an analysis under a state law standard that is different from the applicable federal law standard and such claim does not analyze whether his case was prejudiced by his counsel's conduct as required by *Strickland*, such claim is not cognizable upon federal habeas review. *See*, Johnson's habeas petition, R. Doc. 1, p. 11, 13 (wherein he argues that his trial counsel's affidavit and testimony presented at the

Furthermore, because over four (4) years have passed since his convictions/sentences became final, in the event Johnson was to return to state court and attempt to pursue his right to testify claim under federal law through post-conviction proceedings, such an attempt would be procedurally barred as untimely under La. C.Cr.P. art. 930.8.[5] Johnson's right to testify claim should therefore be dismissed with prejudice as both unexhausted and procedurally defaulted.[6]

II. **Claim No. 2 - Ineffective assistance of trial counsel based upon counsel's failure to interview, investigate, or call alibi witnesses:**

The State does not dispute that petitioner's second claim of ineffective assistance of counsel was exhausted on the merits in state court. In order for this Court to grant an application for a writ of habeas corpus as to any claim which was previously adjudicated

---

evidentiary hearing during post-conviction proceedings demonstrate that his constitutional right to testify was violated when he was prevented from testifying by his counsel because his counsel believed that the ultimate decision in that regard was counsel's, rather than the defendant's. Although, in discussing his right to testify claim in his habeas petition, Johnson references several federal cases in passing, his analysis is grounded upon *Hampton*, and he never mentions the applicable *Strickland* standard. He simply argues that counsel's denial of his right to testify violated his constitutional rights and requires reversal of his convictions, regardless of whether denial of that right actually prejudiced his case resulting in unreliable convictions and/or a fundamentally unfair trial). It is not the province of this Court to reexamine the state courts' post-conviction decisions on the state law question of whether Johnson received ineffective assistance of counsel under the state law standard set forth in *Hampton*. *See, Everett v. Beard*, 290 F.3d 500, 507-08 (3d Cir. 2002)(holding that the AEDPA standard of review did not apply because the state courts had analyzed the petitioner's claim solely under state law and did not address the underlying federal issue. Such standard of review does not apply "unless it is clear from the face of the state court decision that the merits of petitioner's constitutional claims were examined in light of federal law as established by the Supreme Court of the United States").

[5] La. C.Cr.P. art. 930.8 provides that no application for post-conviction relief shall be considered if it is filed more than two (2) years after the judgment of conviction and sentence has become final. La. C.Cr.P. art. 930.8. Since Johnson's convictions and sentences became final in January 2007, La. C.Cr.P. art. 930.8 would bar him from now filing a post-conviction relief application asserting a federal right to testify claim.

[6] Although a habeas petitioner can overcome a procedural default by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law" or by showing that a failure to consider the merits of his claim will result in a "fundamental miscarriage of justice," Johnson has not made such showings in the present case. *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

on the merits in state court, the Court must find that adjudication of such claim: (1) resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) and (d)(2).[7] The clearly established federal law applicable to this ineffective assistance of counsel claim is set forth in *Strickland*.[8] Thus, the issue relative to this claim is whether the

---

[7] Additionally, a state court's factual findings are presumed correct unless the petitioner rebuts the findings with clear and convincing evidence. §2254(e)(1).

[8] As discussed above, to prove ineffective assistance of counsel under *Strickland*, Johnson must establish:

(1)   that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

(2)   that the deficient performance "prejudiced" his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial where the result is reliable.

*Strickland*, 104 S.Ct. at 2064. To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987)). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See, Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). The court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin*, 796 F.2d at 817. Great deference is given to counsel's exercise of his professional judgment. *Bridge*, 838 F.2d at 773. Mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error has no effect on the judgment. *Strickland*, 104 S. Ct. at 2066.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 104 S. Ct. at 2067. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,104 S.Ct. at 2068. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. Id. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the

state courts' decision denying this claim was contrary to or an unreasonable application of *Strickland*.

In this claim, Johnson argues that his trial counsel was ineffective in failing to interview, investigate, and call an alibi witness to testify at trial -- specifically, petitioner's girlfriend, Nakisisia Ross ("Ms. Ross"). Johnson contends he insisted that his counsel present Ms. Ross's testimony that Johnson was with her at the time of the crime since it would provide exculpatory evidence in support of Johnson's defense theory of misidentification; however, his counsel elected not to interview her and call her as a witness at trial. This claim was considered in detail during post-conviction proceedings by a Commissioner for the 19th Judicial District Court. The Commissioner first concluded that defense counsel's decision not to call Ms. Ross as a witness was not deficient conduct since it was a matter of trial strategy, and the strategic decision to call or not call a particular witness is not *per se* evidence of ineffective assistance of counsel. *See*, Commissioner's Recommendation, R. Doc. 1-2, p. 86, citing *State v. Washington*, 2001 - 1312 (La. App. 5 Cir. 5/16/01), 788 So.2d 596, 607, *writ denied*, 2001-1718.[9] As evidence

---

errors are "sufficient to undermine confidence in the outcome." *Martin*, 796 F.2d at 816-17.

[9] *See also, Jones v. Cain*, 2010 WL 5375951 (E.D.La. 2010), citing *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984) and *Green v. Cockrell*, 2003 WL 21145722, *2 (5th Cir. 2003)(There is a strong presumption that counsel's decision regarding whether to call a witness is one of trial strategy).

The U.S. Supreme Court has cautioned courts not to second-guess counsel's decisions on such trial tactics through the distorting lens of hindsight. As the United States First Circuit Court of Appeals has explained:

> The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony. The witness may not testify as anticipated or the witness's demeanor or character may impress the jury unfavorably and taint the jury's perceptions of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused.

that defense counsel's decision not to call Ms. Ross was strategic, the Commissioner referred to a letter that defense counsel sent to petitioner (which petitioner had attached as Exhibit D to his PCR application), wherein defense counsel explained that he did not believe that Ms. Ross's testimony that petitioner was with her at the time of the crime was credible and that defense counsel felt Ms. Ross's testimony would not be believable "in the eyes of the jurors without other corroborating evidence." Such statements indeed suggest that defense counsel's decision not to call Ms. Ross as an alibi witness was a tactical choice (*i.e.*, a choice that defense counsel considered and elected not to pursue based upon his professional judgment), to which great deference is to be given by this Court.

Moreover, for reasons evident from the record and discussed in the State's opposition to Johnson's present habeas petition, defense counsel's strategic decision not to call Ms. Ross as an alibi witness appears to have been a sound one. As discussed above, Johnson admitted to police that he was on drugs at the time of the robbery and did not know whether or not it was him on the video footage perpetrating the crime. With the

---

\* \* \*

> Reasonably competent trial counsel might well have determined that the best prospect for acquittal lay in discrediting the government's witnesses, rather than presenting additional testimony which could appear to legitimate the government's case or raise questions about the defense not previously suggested by the government's evidence.

\* \* \*

> The decision to *interview* potential witnesses, like the decision to present their testimony, must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case. Counsel need not chase wild factual geese when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial as a matter of law . . .

*See, Sartain v. Cooper*, 2008 WL 4758609, \*9 (E.D.La. 2008), quoting *Lema v. United States*, 987 F.2d 48, 54-55 (1st Cir. 1993)(citations and quotation marks omitted).

jury having knowledge of that admission, defense counsel reasonably believed that testimony by Ms. Ross (an individual who shared a personal, romantic relationship with petitioner) that Johnson was with her at the time of the crime would likely have been viewed by the jury as biased and lacking in credibility, and Ms. Ross probably would have been stringently cross-examined had she been presented as an alibi witness. Additionally, if Ms. Ross had been called as an alibi witness by the defense, it would have given the State a second opportunity, during rebuttal, to present the testimony of the three (3) eyewitnesses who had already identified Johnson as the perpetrator during the State's case. As the State notes in its opposition, "[a]llowing the three eye-witnesses to twice identify the petitioner would have demolished petitioner's already difficult case." The fact that defense counsel's strategic decision not to call Ms. Ross as a witness failed to result in an acquittal of Johnson does not mean that his counsel was ineffective under *Strickland*. "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Since the undersigned finds that defense counsel's decision was sound under the circumstances, and not ill chosen, the Commissioner's conclusion that counsel's conduct was not deficient is a reasonable application of *Strickland*.

Finally, even assuming the Commissioner's determination that counsel's conduct was not deficient was unreasonable, the undersigned nevertheless finds that the Commissioner correctly determined that Johnson was not prejudiced by his counsel's decision. As mentioned above, in order to prove the prejudice required under the second prong of the *Strickland* analysis, the petitioner must demonstrate that there is a reasonable

13

probability that, if defense counsel had called Ms. Ross to testify, the outcome of his proceeding would have been different (*i.e.*, that the failure to call Ms. Ross as a witness undermines confidence in the outcome of Johnson's case). The undersigned agrees with the Commissioner's conclusion that, even if Ms. Ross had been called as a witness, there is not a reasonable probability that the outcome of Johnson's trial would have been any different since all three of the eyewitnesses who were present at U.S. Agencies at the time of the crime had a significant opportunity to view him[10] and unmistakably identified him as being the person who robbed them at gunpoint, since video footage depicted an individual who looked like Johnson as being the perpetrator of the robbery, and since Johnson himself was not even capable of disputing that he was the one on the video footage because he was on drugs and could not recall what he was doing at the time of the crime and admitted that the gunman on the video looked like him and had clothes like him.[11] Accordingly, because Johnson has failed to demonstrate that the state courts unreasonably applied the two-pronged *Strickland* analysis to the facts of his case (and he also has not shown that the state courts' decision was based upon an unreasonable

---

[10] As discussed above, Rice and Ganaway had the opportunity to view the gunman for at least fifteen minutes, while they were waiting for the timer on the safe to expire. Additionally, Wilson carried on a conversation with the gunman before he realized that he was even being robbed so he had the opportunity to observe the gunman prior to being under any duress.

[11] As mentioned in defense counsel's letter to petitioner, defense counsel made the strategic decision to put petitioner's mother on the stand at trial and to have her testify that the individual in the video footage did not appear to be petitioner. Despite such testimony, the jury nevertheless chose to believe the three eyewitnesses who were present at the time of the crime and who identified petitioner as the perpetrator without any doubt in their minds. *See,* Exhibit D to petitioner's PCR application, R. Doc. 1-2, p. 56. The fact that the jury rejected the testimony of petitioner's mother further suggests that the jury likely would have rejected the testimony of petitioner's girlfriend as biased and/or lacking in credibility.

determination of the facts in light of the evidence), Johnson's ineffective assistance of counsel claim should also be dismissed with prejudice for lack of merit.

## **RECOMMENDATION**

For the above reasons, it is recommended that the petition for writ of habeas corpus (R. Doc. 1) filed by Jamaal R. Johnson should be **DISMISSED WITH PREJUDICE**.

Signed in chambers in Baton Rouge, Louisiana, September 19, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**